UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IQPAL S. KANDHOLA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:19-cv-03769-JRS-DLP |
| ) | |
| WENDY KNIGHT, ) | |
| ) | |
| Respondent. ) | |

**Order Granting Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Iqpal S. Kandhola petitions for a writ of habeas corpus challenging a prison disciplinary conviction in case number CIC 19-05-0175. For the reasons explained in this Order, the petition is **GRANTED**.

### A. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## B. The Disciplinary Proceeding

On May 11, 2019, Indiana Department of Correction ("IDOC") Chaplain Jeffrey Hinshaw wrote a Report of conduct charging Kandhola with disorderly conduct, a violation of IDOC Adult Disciplinary Code 236-B. Dkt. 7-1. The Report of Conduct states:

> On 5-11-19 at approximately 3:15PM, I Chaplain Hinshaw, was supervising the Chapel when a group of six Offenders, including KANDHOLA (264594) became disorderly while attending a chapel service. This disorderly action included talking and what appeared to be an STG meeting. A number of Officers were called to support removal of the Offenders participating and because of the number of Officers called, and because it was during dinner feed, movement was held until all of the Offenders removed were placed in thier (sic) housing Units. Upon review of the participants, it was discovered that many were, in fact, STG members.

*Id.*

On May 16, 2019, Kandhola was notified of the charge and given a copy of the Screening Report. Dkt. 7-4. He pleaded not guilty and asked to call offenders Santiago and Anguiano as witnesses *Id.* Both witnesses provided written statements in response to the following question: "Was [Kandhola] talking, being rowdy or disorderly in the chapel?" Dkts. 7-7, 7-8. Santiago answered, "No!" Dkt. 7-7. Anguiano answered, "No Kandhola was not talking or being rowdy, disorderly at all and they were all only warned once not to talk." Dkt. 7-8.

Officers D. Anderson and R. Voss also provided the following written witness statements:

> I Ofc. Anderson 266 responded to an incident in the Chapel on 5-11-19. Upon arrival I noticed multiple Hispanic Offenders standing up and being told to leave by other officers. The offenders were hesitant to leave, stating the chaplain was being racist towards them. They did leave eventually out of the chapel without incident and were sent to their different units.

> On 5/11/19 @ Aprox (sic) 3:20 pm I Officer R. Voss #506 Did Respond To a call to Signal 8 the Chapel. Appon (sic) arrival there were several men Being loud and bel[l]igerent. These men were escorted out of the Chapel by several officers and continued to be loud as they were escorted to their dorms.

Dkts. 7-2, 7-3.

The disciplinary hearing officer reviewed the video evidence and provided the following report:

> I, Sgt. S. Napper, reviewed the video footage for case number CIC 19-05-0175. I observed offender Kandhola, Iqpal 264594 enter the chapel and sit in the 2nd row. Offender Kandhola was engaged in verbal conversation with the offenders sitting nearest to him in the second row. When custody staff enter the chapel he exits the Chapel with the rest of the offenders from the second row. There is no audio on this camera.

Dkt. 7-9.

The respondent has submitted a copy of the video as an *ex parte* exhibit. Dkt. 8. The Court has reviewed the video and notes the following relevant events:

**2:07:25**: The inmates and other congregants rise as a religious service begins.

**2:16:16**: Chaplain Hinshaw approaches Kandhola and five other inmates sitting in the second row. He speaks with them for two minutes and checks their ID cards.

**2:22:48**: Chaplain Hinshaw and multiple correctional officers walk from the back of the chapel to the second row.

**2:22:58**: Chaplain Hinshaw appears to tell Kandhola and the other five inmates to leave. A correctional officer talks with the inmates for about 20 seconds.

**2:23:22**: The six inmates stand up and exit the chapel single file.

*Id.*

A disciplinary hearing was held on June 12, 2019. Dkt. 7-6. Kandhola provided the following statement: "I wasn't being disorderly. I gave him my ID when he asked for it." *Id.* The disciplinary hearing officer considered Kandhola's statement, the witness statements, the Report of Conduct, and the video evidence and found him guilty. *Id.* Kandhola received a previously suspended 30-day loss of earned credit time from disciplinary case number CIC 19-01-0108.

Kandhola appealed his disciplinary conviction to the Facility Head and the IDOC Final Reviewing Authority. Dkts. 7-10, 7-11, 7-12. These appeals were denied. *Id.* He then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### C. Analysis

Kandhola raises three grounds for relief, which the Court restates as: (1) the Report of Conduct was submitted more than 72 hours after the incident in violation of IDOC policy; (2) the disciplinary conviction is not supported by sufficient evidence; and (3) Officers Anderson and Voss provided conflicting witness statements. Dkt. 1, pp. 3-5. Because the Court finds ground two meritorious, it need not discuss grounds one and three.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The Report of Conduct alone may provide some evidence to support the disciplinary conviction if the report "describes the alleged infraction in sufficient detail." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

To find an inmate guilty of disorderly conduct, prison officials must provide some evidence that the inmate was "exhibiting conduct which disrupts the security of the facility or other area in which the offender is located." Dkt. 7-14, p. 7. Kandhola interrupted a religious service by talking loudly with a group of inmates, but there is no evidence that he disrupted security in the chapel or elsewhere in the facility. The service was briefly paused while Chaplain Hinshaw checked their

ID cards and again when they were escorted "without incident" from the chapel. *See* dkt. 7-2. Neither Kandhola nor any of the other inmates in the chapel became aggressive or unruly. Correctional officers did not forcibly remove the inmates from the chapel or take other measures to maintain order. Although "movement was held" elsewhere in the facility while Kandhola was transported from the chapel to his housing unit, there is no evidence that this caused a disruption to security.

The respondent claims that Kandhola was "arguing with the officers" in the chapel and "refused to leave when [he] was ordered to do so." Dkt. 7, p. 9-10. This is not a fair characterization of the record. Correctional officers spoke with the inmates for about twenty seconds before the inmates stood up to leave. Neither the officers nor the chaplain characterized this brief conversation as combative or argumentative, and there is no evidence that it disrupted the security of the chapel. The inmates all stood up within seconds of one another and left together in a single file line.

Kandhola's behavior may have been rude to the chaplain and his fellow congregants, but it did not disrupt security and cannot support a disciplinary conviction for disorderly conduct. Accordingly, his request for relief on this ground is **granted**.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Because the petitioner was denied due process in disciplinary proceeding CIC 19-05-0175, his disciplinary conviction and the sanctions imposed must be **VACATED AND RESCINDED**. The petition for a writ of habeas corpus is **GRANTED**. The petitioner's earned credit time must be **IMMEDIATELY RESTORED**, and his new release date must be calculated accordingly.

**IT IS SO ORDERED**.

Date: 6/2/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

IQPAL S. KANDHOLA
264594
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov